Good morning, Your Honors. Janine Manhattan for Appellant Cery Perle. I believe we narrowed down the two discrete issues rather well, especially in the reply. The issue the Court's looking at really isn't whether or not Cery listed the arbitration judgment on his schedule. I think the Courts below were concerned with that. Oh, he must be a really bad guy. He hid that. He didn't list it. We believe that's a tribal issue of material fact. There was an NASD arbitration listed on the schedule. Whether or not that was enough notice almost doesn't matter, because the Court only applied the first half of 523A3. The Court only looked at was it listed. The second half of the statute, the language of the statute says, unless the creditor had notice or should have had notice. And the Court never even got to that, nor did the appellate panel. Oh, he didn't list it. He's out of luck. There are so many cases on point in which it didn't matter that the debtor didn't list the debt, because he either got actual knowledge or his attorney got actual knowledge. And therefore, the Courts all said the creditor's out of luck. He knew. Is there a case where notice went to a lawyer, but it didn't have the name of the particular creditor? Yes. And the lawyer was tasked with knowledge that that creditor was involved? Yes. And what case is that? I saw Volkin, which said the opposite. The notice didn't identify the creditor, so the attorney wasn't tasked with responsibility. All the cases I saw the name, at least, of the creditor was identified. So what case are you looking at? In Price, the creditor was not listed. In Fulton, Linser, the creditor was not listed. In Purenhart v. Fulton, which was cited in Linser, the creditor was not listed. In Herndon v. Delacruz, the creditor was not listed. In Ray Walker, cited in Herndon v. Delacruz, the creditor was not listed. So I would cite to those for the Court. All right. In all of these cases where the creditor or his attorney had actual knowledge, these cases all came up within a month or two after the deadline, and those creditors were out of luck. This creditor waited five years after the bankruptcy was closed to start thinking about enforcing his judgment. In Herndon, the Court actually says there was no due process violation because the creditor had actual knowledge. All right. Moving on to A-19. In Gibbons. Oh, I'm sorry. I want to go back for just a minute. Your theory is it was Russo, right, who was the lawyer for Fiero Brothers originally? Yes, Your Honor. But after the arbitration, he no longer represented Fiero Brothers on that matter, correct? Correct. There were successive lawyers, two other lawyers, one ultimately who secured the judgment, but it wasn't Russo. Then it turns out years later Russo is suing your client on behalf of another entity. He's involved again? Yes. Okay, and as I understand it, Russo continues to represent the Fiero Brothers in some capacity but not on this case anymore. Correct. And so your theory is, well, Russo learned through the course of this other litigation involving a different client about the bankruptcy filing so that that information, that knowledge should be imputed to Fiero Brothers. Yes, Your Honor. And the problem that I have with that is that if there are competing claims in bankruptcy court, including Russo's current client, doesn't that put him at odds with the current client when he gives information that may give some priority to a former client over the current client? I mean, you're saying he essentially remains the agent of the Fieros, but he's representing a new client who's going to make claims in bankruptcy against some of the assets, right? Yes. And I just think it puts him in an incredible conflict for Martin Russo to call a former client and say, hey, I've learned in connection with another client's case that this fellow's in bankruptcy so you better file your non-dischargeability claim. I mean, it seems like it might be causing him to compromise the interest of the current client who may say, I don't want them to know. I have a priority here. The fewer people that know, the bigger the pot out of which I can get paid back. The problem is he never stopped representing the Fieros ever. Well, on this case he did. On this case he did. On the one that led to the arbitration award, his representation of the Fieros ceased at some point. And then subsequent lawyers took over to pursue the collectability of that, correct? No one ever pursued the collectability of it. Well, they took the arbitration award to the superior court and had it reduced to an enforceable judgment. They needed California counsel to do that. Okay. But those were different lawyers. It wasn't Russo. He was out of the case at that point. However, he continued to represent the Fieros with respect to the exact same allegations. The Corsair complaint he filed is the exact same allegations as he filed in the Fiero case. Filed on behalf of a different client, though. If he had a conflict, I would suggest that he had a duty to the Fieros to say, hey, I've got a conflict, you better get another attorney to represent you with respect to this. I'm just troubled by the idea that you say he had a duty to go back to a former client whose interests may be different from the current client and tell the former client information that he's learned in connection with his contemporaneous representation of the new client. I think if I were the new client and, as I said, there were a finite pool of money, in my interest that the fewer people that knew about it, the better, because the chances are I'm going to get a bigger portion of whatever is there. Right? Yes. However, he was still representing the Fiero brothers in several matters. He was representing the Fiero brothers in another bankruptcy case, in the Carpenter case. He was representing the Fiero brothers concurrently when he found out about this in another securities litigation case in which the Fieros were on the hot seat. He was still representing the Fieros. They were a current active client. He probably, given the number of cases he was representing them on, was representing them every day. I don't have them on the stand. I would suggest, since we seem to be going back and forth about this, that perhaps it's an issue of material fact which shouldn't have been decided at summary judgment. Well, I don't necessarily see that. I see it as a legal issue about whether we should impute an agency of responsibility to him when he no longer represented them and, in doing so, might put him in conflict with a current client. I think that's a legal issue. I don't think that's a factual issue. Okay. We listed in our briefs all the things Rousseau knew and what he was doing at the time. He didn't have to go back through his records to figure out if some former client would be affected when he got knowledge of this bankruptcy. He knew. And I feel like the courts below were concerned about making bad policy, said, oh, we can't put this duty on an attorney to go look through all his files to see if any former client might be affected by this. I feel like the court just needed to look at these facts and apply it to this case. This guy knew. He didn't have to go looking through his files. He knew it, and he knew it in time to file a complaint because he did file a complaint for his other client. And if there was a conflict, he had a duty to let his clients know, I've got a conflict. So assuming for the moment that we decide that it wasn't enough and that there wasn't sufficient notice, does that mean you lose? Is that the end of it, or is there more? There's more because A19 should not have been applied to reopen this closed judgment. In Gibbons and in all of the cases, and in the legislative intent, every single thing they say they talk about existing, pending, maximum extent possible to all existing bankruptcies. So if his claim wasn't discharged and he moves to reopen the case in the bankruptcy court, grants that, then it is open, it is an ongoing proceeding, then is it appropriate to apply A19? I don't believe so because it applies. When the petition is filed, not a reopening, the petition, if the petition is still open before the bankruptcy is discharged and closed, that's when you can apply it. Judgments need finality, and to just reopen it later, five, six, seven years later, and say, oh, well, this is the law in effect now, it completely gives no meaning to ex post facto principles. What the Gibbons language said was, yes, this can apply to prior conduct. It doesn't say it applies to prior judgments. If the conduct is still being litigated, that's fine. This was closed. There is no language anywhere which says you can open up a closed judgment. It all says pending. It all says existing in every one of those cases. And this was closed. There was a judgment. It was done. And that's why A19 should not be applied to this case. And that's all I have for the court this morning. Do you want to save the rest of your time for this call? Yes, please. Good morning, Your Honors. My name is Leslie Aikens. I represent the appellee, Alfonso Figueroa. Just a few points, if I can make, addressing what has been raised before the court. With respect to A6 or 523A6, there is the assumption in the strong urgence that the debt was listed, which we have clearly shown it never was. If you look at the schedules, which was in the record very clearly, it lists on Schedule E a NESD claim 1999. But that is a section that deals with tax claims, government claims, regulatory claims, and it also happens to correspond with the evidence that we provided to the lower court, which is also in the record that there was a NESD disciplinary matter that was commenced against Mr. Pearl back in 1999. So it would be appropriate that that NESD claim, which they try to say this was the notice and the filing to Figueroa Brothers was there. That's not true. And then if you look at the record, which is Schedule F of the bankruptcy petitions, you see all other unsecured claims. And in that section, Mr. Pearl was very clear to list out a number of FINRA arbitration awards in judgments for other claims filed against him. So I think we also provided to the lower court the evidence of his own testimony where he says, you know, I notified FINRA. We also showed him and he testified it's not there specifically. What's interesting, though, is aside from that, they want to go and argue that because Mr. Russo had knowledge, it should be imputed to the creditor, Figueroa Brothers. So it's interesting they tried to argue this amorphous general language of an NESD debt on a Schedule E is the claim for Figueroa Brothers, and yet they then argue nothing about going to NESD or anything specific that goes to Mr. Russo. The Schedule E didn't even list the amount, did it? Nothing. It says nothing. First of all, the arbitration award was the 1998 arbitration award. It did not list an amount. It did not say $350,000. It did not have anything that would put anyone on notice as to what particular NESD arbitration matter it dealt with, whether it was disciplinary, regulatory, or a customer complaint. What's the factual difference do you see between this case and Price and Linzer? That's very, very easy. I'm sorry, Your Honor, and I did not mean to interrupt. Those were active cases where the attorney was actively representing the creditor at the time, like in a civil action, and then they go file bankruptcy, so he has knowledge. Linzer, I think they found nine days beforehand is when he got knowledge of the bankruptcy, and the court said, well, you may be able to argue that ASICs would preclude it. Nine days is not enough time to go prepare an adversary complaint and do something. So it's the difference, then, that in this particular case, Russo no longer represented Fiero Brothers in connection with the matter that led to the arbitration? Very, very much so. That's the differential, the different fact that you're relying on? It is a, well, one that is a huge, huge difference. Because I think what I hear counsel's argument is that as a practical matter, when Russo got the notice, he knew just as the lawyers in Price and Linzer knew. Not at all. You have to remember, this arbitration award, first of all, Mr. Russo, MPR law practice, whatever, is in New York. It is a New York firm, New York matter.  They initially started this with a California law firm and filing a California action, and then it was compelled to arbitration before the NESD, which is when Mr. Russo got involved. He then tries the case in the NESD, gets an award. I think it was September 17th of 1998. Great. Now what you have to do is you have to go back to a superior court in California, file your petition to confirm the arbitration award, get it confirmed, get a judgment, in which he hired a separate law firm to do. The following year, he gets another law firm involved to go and record an abstract judgment. All of this is provided notice to Mr. Tom Fain of, I think it's Fain & Sherwin, who represents Mr. Pearl and his firm. They're all in notice. We've got California lawyers involved. That's 1998-1999. It's not until 2001 that he files his bankruptcy petition. So you've got a two- to three-year difference. Now, he may be representing them in other matters, and I don't think there's anything in the record to suggest the frequency that Mr. Pearl's lawyers would like you to believe. But it's very different. For all Mr. Russo knew, this debt was paid off two years ago. In NESD, you have to pay off your debts or any arbitration award within, I think it's 30 days, or that's the grounds for the NESD to yank your membership for one. So it's not like things go on forever. For all he knew, it was resolved. And when he got the bankruptcy petition, if you look at it, there's nothing in there that says there is Fierro Brothers. It's not like anything's listed on the creditors' matrix that says Fierro Brothers care of MPR. There's nothing in there that says there is a NESD arbitration award for $350,000 outstanding. Regardless of what schedule you look to, there's nothing that will put him on notice that here is a debt that could possibly apply to a client, to a former client. He only is notified to the extent he ever gets noticed as Corsair Capital care of MPR law practice. That is it. He did not file the complaint for Corsair on August 28th like they claim. We showed evidence in the record before that was Mr. Scott, I think it was Greenberg Traug, out here. And when he was admitted to come in and participate in the adversary proceeding, it wasn't until November of 2001. So it was after the time he could do anything. I've got a very dry mouth. So there is nothing there that puts him on notice that a client could be affected or that he's doing anything. And when he got noticed, there's still nothing that would tell him the Yarro Brothers has an issue. So I think that's a red herring. There simply isn't any kind of notice. First of all, there simply, it was not filed. That claim was not filed anywhere on that petition and its schedules. It's not showing anywhere in any fashion. It does for other people and it does for FINRA and it does for the SEC. It doesn't ask you that group. But even if it were, you look at notice to Mr. Russo and you can't tell that his client for a client is even a debtor or could be a debtor. And I think we have to remember that when a debtor files for bankruptcy, it has certain obligations. There is a quid pro quo for getting discharged, for seeking relief, and you've got to provide notice to your creditors. You have to list them. You have to do it with enough particularity where people can know that their rights, their property could be lost. There is nothing here. The second point as to A19, that is a very, very different situation. A19, in cases, Mr. Blank, can I get some water for one second? Please. Thank you. A19, what's important about A19, it does not make illegal conduct, which was permissible and legal before, manipulating the markets and the securities industry, engaging in fraud and misrepresentation has always been a crime, at least it has been a violation of the Act, whether it goes back to 1933 Act or 1934 Act or whatever. And it's been around. You cannot do these things. A19 only recognizes or adds to it and makes improper or illegal conduct, which already was. It doesn't expand the scope of punishment. It doesn't penalize you for something which at the time was legal to do. The cases that were cited by Mr. Palmer, whether it be the Cox or the Sachs case or the Koch case, they both are very, very distinguishable because they both dealt with conduct which at the time was all right, or they expanded the punishment. So you did have a change in rights. You did have taking of property. You know, it did affect it. But that's not what this is. It's not like, I think, Sachs, on the Sachs case, where if you were a former broker and you lost your license or something, you four could represent people in, like, NESC arbitration. We see that a lot. Well, now they've changed the rules, and if you've been banned, you cannot represent somebody there. He claimed that affects my constitutional rights, affects my livelihood. On Gibbons, it was a gentleman that was banned from the industry, and then they enacted a law which not only said he could no longer associate with a broker-dealer, but it kept him engaging in new issues. You know, it expanded what he could do further going forward. Going forward, it expanded how much he could do and certain activities he could do, which, you know, was going back to whatever transaction he did or he engaged in was proper at the time. So now you've got something which is greatly expanded. You don't have that here. You have a situation where Mr. Palmer and his firm were caught manipulating the market. They bought up and they offered and put out into the public this offering of shopping.com. They bought up 90% of the market within their own house accounts or their customers' accounts, and they made it such that the market makers, which have to be able to buy and sell in the marketplace at any given time, including selling short and replacing, they made it such that they could not cover the shorts. You know, they made it such that when they were out there in the marketplace doing what they're required to do and they went to go cover the shorts or close out the transaction, the only game in town was Mr. Palmer. So he thought it was very good to charge above market rates. Some of the transactions went as much as 50% above the market. You can't do that. The SEC didn't think so, and they brought an action. What about the retroactivity issue? Does it make a difference that this was a closed and then reopened bankruptcy? Not at all. I think that, too, is a red herring. I mean, many cases when you file for bankruptcy, within three or four months you get a closure and discharge. You know, what you're telling debtors is don't talk about it, don't mention it, be quick and get it done, and you can get out from under a lot of conduct or misconduct, which isn't right. The only reason why four-year-old brothers were not there filing groups of claim and participating way back when is they didn't know. And they didn't know because they were not informed, and they could have been informed. Mr. Pearl was obligated to inform them. Now, if they were never informed, they are denied their opportunity and their right to go file an adversary proceeding and to challenge it. What showing did they have to make to reopen the bankruptcy? October 2006.  I provided a letter from Mr. Palmer's counsel informing me that I could not, because I was the attorney that started trying to do things. They were saying that there was this bankruptcy, you couldn't go forward, and we showed the court that we did not receive notice. She didn't meet a factual finding that there was the bankruptcy petition does not list the client. That's my question, not what happened here, but what's the standard that one has to comply with to get the bankruptcy reopened? What do you have to show in order to have a bankruptcy judge exercise discretion and say I'm going to open this again? And I'm going to be embarrassed to tell you off the top of my head, but I cannot tell you because I cannot recall exactly what I did. As I recall, though, we had to show that there was a non-dischargeable claim, because if there was a claim that was dischargeable, it would be a moot point, and that there was not notice. Did the bankruptcy judge have to make some threshold finding, at least that there wasn't notice or there wasn't adequate notice before the bankruptcy was reopened? I believe so, and I think that we included it as part of the record. Because we filed, as I recall, our initial motion to reopen the bankruptcy. Is it in the record in this case? I believe it is. I hope so. I've got the record back there with my cart that I brought with me. But we had to show that there was a basis for the reopening and it was a non-dischargeable claim. She then allowed it to be opened. We had our complaint prepared, filed, and served, and then it was challenged twice by Mr. Pearl and his attorneys. But on the ASICS matter, from a factual standpoint, there is no triable issue of fact. If you look at the document, just look at the petition and look at the schedules, look at the creditor's matrix, and it could have been, again, amended at any time as well, and it never was. And so you start that as a starting point, and then second, you look at notice. And whether Mr. Russo is an agent for service on a biannual statement or he's still representing a representative in a different bankruptcy in New York, it is irrelevant because when you look at what's there in front of him to give him notice when he finally got it and there's no evidence at all that it was anywhere prior to early August, there is nothing to put him on notice that it can affect another client. You're over your time. I'm sorry. Please wrap up. Thank you. So, again, the case law, I believe, is supportive. Oh, the last case I wanted to mention was Hardy that we cited versus Angus Woodman and Lewinkowski, where they face, again, the same issue of trying to determine whether or not you can apply 523E19 retroactively, and the answer, again, was yes. And, again, it went back to there's nothing here in E19 applying retroactively which violates anybody's right of property interest. It goes to the fact this conduct was incorrect and illegal at the time, does not expand any penalties or punishment. And, frankly, the law of the Ninth Circuit is you apply the law at the time it was opened, the case was opened, and it was opened. So, thank you. I'd like to point out that the district court judge admitted that Russo had actual knowledge of this bankruptcy, but that Pearl had to tell Fiero. That flies in the face of all of these other cases which state that notice to your attorney has to be imputed. I don't see how that can be said, because I'm looking at the Schedule E, and I've looked at the judgment. The judgment is very clear. There's nothing ambiguous in the language of the judgment, and it almost appears to me as if the Schedule E was artfully written to sort of disguise the nature of the debt. I mean, for one thing, it doesn't list the Fiero brothers who were the opponent in the arbitration. It lists NASD slash NASD regulation as the creditor, which, at best, is misleading. I mean, it was an NASD arbitration, but they're not the creditor. They were the adjudicator. And then, even though the amount was clear to everyone, 350, it lists the amount as unknown. Now, the date, you know, that's a minor thing, 98-99, but I don't – I mean, it appears to me that somebody filling out this schedule did it in such a way that it would try to disguise the true nature of the debt, and if that's the case, I don't know how it can be said that they had actual notice that there was a petition to discharge this. There are so many cases on point where the creditor, the debtor, just plain left them off entirely, and perhaps that's what happened here. But this is different. I mean, this isn't just leaving it off. This is almost writing it in a way as to obscure the true nature of the obligation of the debt. The problem is that all these other cases say it doesn't matter. If the attorney had actual knowledge or if the creditor had actual knowledge, whether or not it was proper, then they're held to that time bar. I'd like to direct the Court's attention to just a couple of quotes from our authority. Imperian Hart v. Fulton, quoted in Linzer, the law firm represented an unscheduled creditor, and it was authorized to receive notice of the bankruptcy case. The knowledge of the bankruptcy case must be imputed to the creditor, even though the attorney was not expressly retained to represent the client in that case. And then Linzer goes on to state, when counsel acquires knowledge of a bankruptcy case, that attorney is obligated to determine what action to take to protect that client's interests. So Russo had the knowledge because he filed the Corsair claim on the exact same facts. He was still representing the Fierros, and what he chose to do with that information was irrelevant. He had it, that knowledge legally has to be imputed to the Fierros according to this language. And then the Court says, the Court is compelled to hold that the creditor's non-bankruptcy counsel is deemed to be an authorized agent for receiving notice of the debtor's pending bankruptcy case because the Court and the case number were in the attachments that the attorney had knowledge of. And Russo filed a claim on the same facts. He had knowledge, and all these other cases say, yeah, the debtor was playing fast and loose with these laws, and they didn't list them, and they should have, and they put the wrong address, and this and that. But boy, when that attorney or actual knowledge is all the courts are applying because they care about the finality of the discharge. And with respect to Gibbons, Gibbons cites a case called Matter of Busick. The right to discharge vests that debtor's right to have those debts discharged. And Pearl had an expectation that when his bankruptcy closed, his right to have everything discharged vested. It wasn't pending. All the courts say, yeah, oh, the law might change from the date you filed the petition to the date it's closed. But once it's closed, it's vested, and that's a vested right. And to go back and retroactively apply it takes away a right that's vested. And that's why it's important. And I believe the court revealed the problem with its decision when we pointed out, oh, Russo had knowledge. And the court said, yeah, Russo had knowledge, but I don't think there's any authority for imputing that knowledge to the client. And the court was mistaken because there is authority. And then the bankruptcy appellate panel characterized Russo as a one-time attorney. And all the record evidence shows that he wasn't a one-time attorney. He started representing him on that matter and another matter and another matter and another matter, all on securities issues. And the fact that Pearl may have manipulated the market, as did the Fierros. The Fierros got dinged a lot harder. So the conduct is really irrelevant. What Pearl did is not relevant. What's relevant is the time frame and the imputed knowledge. Thank you, Your Honors. Thank you. Okay. The case of Inmate Pearl is submitted.
judges: Burns, Ikuta, Nguyen